IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| TERRENCE T. HAGGINS, | ) | C/A No. 4:07-931-HMH-TER |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| STAN BURT, WARDEN OF | ) | |
| LIEBER CORRECTIONAL | ) | |
| INSTITUTION; ET.AL., | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

The plaintiff, Terrence T. Haggins, filed this action on April 3, 2007, alleging various claims for violations of his constitutional rights.[1]  The plaintiff is an inmate housed at the Lieber Correctional Institution ("LCI").  Before the undersigned are cross-motions for summary judgment (documents # 61 and 71) and the plaintiff's motions to strike the defendants' summary judgment motion (document # 70)[2] and to compel discovery (document # 78).[3]

**I.  PROCEDURAL BACKGROUND**

On September 21, 2007, the defendants filed a motion for summary judgment, along with

---

[1] This date reflects that the petition was date stamped as received on April 3, 2007, at the Lieber Correction Institution mailroom. (Pet. Ex. 18.)  Houston v. Lack, 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

[2] The undersigned notes that the plaintiff filed a motion to amend his summary judgment motion (document # 77).  That motion has been  granted in a separate order and the plaintiff's amendments to his summary judgment motion were considered in preparing this report.

[3] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the district judge.

supporting memorandum, affidavits, and exhibits. (Document # 61.)   The undersigned issued an order filed September 24, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir.1975), advising the plaintiff of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately.  On October 11, 2007, the plaintiff filed his own motion for summary judgment along with supporting memorandum, an affidavit, and exhibits. (Document # 71.)

## II.  DISCUSSION

### A. ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The plaintiff alleges the defendants violated his First, Eighth, and Fourteenth Amendment rights through the use of excessive force and the denial of due process in relation to grievances and and a classification hearing. (Compl. at 9.)

The plaintiff is currently an inmate at Lieber Correctional Institution (Lieber).  On December 21, 2006, the plaintiff was placed in lock-up for assaulting defendant Officer Rodgers and Sargent Von Mutius. (Compl. at 5.)   The incident report states the officers were passing out breakfast when the plaintiff came out of his cell and ignored directions to go back inside.  (Defs.' Mem. Supp. Summ. J. Mot Ex. 14 - December 21, 2006, Incident Reports.)  When Sargent Von Mutius tried to handcuff the plaintiff, the plaintiff punched the Sargent in the jaw.  *(Id.)*  Officer Rodgers sprayed the plaintiff with chemical spray. (*Id.*)   The plaintiff punched Officer Rodgers on the left of his face twice and a struggle ensued.  (*Id.*)  The plaintiff was eventually restrained and handcuffed.  (*Id.*)  Both Officer Rodgers and Sargent Von Mutius were sent to outside medical treatment facilities. (*Id.*)

The plaintiff was charged with two counts of assault and battery with intent to kill.  (Defs.' Mem. Supp. Summ. J. Mot Ex. 14 - December 21, 2006, Incident Reports and Ex.15 -  Disciplinary

cases 58 and 59.) The defendants state the plaintiff was notified in writing of the charges on January 2, 2007, and was presented with the two copies of the disciplinary report and hearing records to sign, but he refused. *(Id.)*

On January 18, 2007, the hearings were held on these charges and the plaintiff pled guilty to both charges. *(Id.)* The plaintiff was sanction with the loss of 180 days loss of canteen and telephone privileges, and 360 days of disciplinary detention. *(Id.)* The plaintiff allege that he filed an appeal on these charges on January 21, 2007. (Compl. at 5.)

On January 31, 2007, the plaintiff filed a Step 1 grievance (LCI- 0143-07) alleging he did not receive notice of the hearing. (Defs.' Mem. Supp. Summ. J. Mot Ex. .) His Step 1 grievance was denied, and he filed a Step 2 grievance received on March 7, 2006. *Id*. His Step 2 grievance was also denied on June 7, 2007. *(Id.)* The plaintiff filed an another Step 1 grievance in January 2007, related to his assault on the Officers in December 2006, but he did not file a Step 2. *Id.*

On February 20, 2007, the plaintiff alleges Officer Rodgers was assigned to the AMU-A side where the plaintiff was housed. (Compl. at 6.) Officer Rodgers contends the plaintiff threatened him saying "You the motherf-cker that got that assault charge on me? I'm gonna get your ass." The plaintiff alleges that while passing out food trays, Officer Rodgers threatened him saying"You know it's not over." (Compl. at 7.) The plaintiff alleges he thought something was in his food and threw his food to the ground. (Id.) He alleges he was maced by Officer Williams. He contends he was not allowed to wash the mace out of his eyes and he was placed in the restraint chair from 5:00p.m. until 9:30 p.m. (Id.)  He also alleges that afterwards he was not allowed to shower when released and he was without clothing, a mattress, blankets, and sheets for five (5) days. *(Id.)*

The defendants contend the plaintiff attacked Officer Rodgers with an ink pen. (Defs.' Mem. Supp. Summ. J. Mot. Ex. Byron Williams' Aff. .) Officer Williams states that he sprayed mace on the plaintiff at 4:30 p.m. and medical staff checked on plaintiff at approximately 4:45 p.m. (Defs.' Mem. Supp. Summ. J. Mot. Ex. Captain Brightharp's Aff. .) The defendants state that at 5:30 p.m. with the medical staff's approval, the plaintiff was placed in the restraint chair. They also state medical staff checked on the plaintiff while he was in the chair and he stated that he was fine. *Id.*

The plaintiff was charged for his threats against Officer Rodgers, and his physical attack, in cases sixty (60) and sixty-one (61). (Defs.' Mem. Supp. Summ. J. Mot. Ex. Burtt's Aff. ; See also Disciplinary cases 60 and 61.) The plaintiff alleges he was served with these charges on March 2, 2007, and did not have enough time to prepare for the hearing which was held on March 5, 2007. (Compl. at 7.) He alleges that on March 5th and 14th, 2007, he asked to review the tape of the hearing so that he could prepare a grievance regarding it, but that the defendant Jenkins did not allow him to review the tape until April 6, 2007, after the time to file a grievance had passed. (Pl.'s Mem. Opp. Summ. J. Mot. at 4.)

Case 61, the charge for assault, was dismissed due to an error in one of the reports regarding the cell number where the attack had taken place. In Case 60, the plaintiff was found guilty and sanctioned with the 360 days of disciplinary detention and the loss of 180 days of canteen and telephone privileges. (Defs.' Mem. Supp. Summ. J. Mot Ex.15 -  Disciplinary cases 60 and 61.)

### B. STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. <u>Cruz v. Beto</u>, 405 U.S. 319 (1972), and <u>Haines v. Kerner</u>, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function

is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir.1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted. Fed.R.Civ.P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings.  Fed.R.Civ.P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. Fed.R.Civ.P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In Celotex, the Court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.

## C. EXHAUSTION

In his complaint, the plaintiff alleges he filed grievances on January 15th, January 21st, January 28th, March 6th, March 14th, March 22nd, and March 26th, 2007. (Compl. at 8.)  The plaintiff

5

filed this action on April 3, 2007. (*See* n.1 infra.)  The defendants contend that the plaintiff has failed to exhaust his administrative remedies prior to filing this action.  The undersigned agrees.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust administrative remedies before filing a §1983 action concerning his confinement. 42 U.S.C.A. §1997(e) states:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

In Porter v. Nussle, 534 U.S. 516 (2002), the United States Supreme Court held that the exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes.  Recently in Woodford v. Ngo, ___ U.S.___ , 126 S. Ct. 2378, 2386, 165 L.Ed.2d 268 (2006), the United States Supreme Court held that the PLRA exhaustion requirement requires proper exhaustion.  The Court stated that "[a]dministrative law requires proper exhaustion of administrative remedies which means using all steps that the agency holds out, and doing so properly." *Id*. (Internal quotations and citations omitted).  Failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including §1983. *Id*.

The purpose of the exhaustion requirement is twofold.  First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Woodford, 126 S.Ct. at 2385 (*quoting* McCarthy v. Madigan, 503 U.S. 140, 145 (1992)).  Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id*. Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to frustrate both purposes of the PLRA's exhaustion requirement.

In order to exhaust the SCDC administrative remedies, an inmate must fill out a Form 10-5 or Step 1 grievance about the matters raised in his complaint and give the form to the Institutional Inmate Grievance Coordinator within fifteen (15) days of the alleged incident of which the inmate complains. The Warden must respond to the Step 1 grievance in writing no later than forty (40) days from the filing of the initial grievance. If the inmate is not satisfied with the Warden's response, he must file an appeal of the Step 1 grievance response by filing a Form 10-5a or Step 2 Request for Responsible Official Review with the Inmate Grievance Coordinator within five (5) days of the receipt of the response from the Warden. A responsible official has sixty (60) days to respond to the Step 2 grievance. The decision of the official who answers Step 2 is considered the SCDC's final response in the matter. Only after completing both Steps 1 and 2 in the SCDC grievance process has an inmate properly exhausted a claim under §1983. 42 U.S.C. § 1997e.

The plaintiff claims that he has filed grievances on his claims, but that the defendants did not timely respond. In his response to the defendant's summary judgment motion, citing Exhibits G and R, the plaintiff states he filed a grievance relating to the defendants' use of chemical spray and the restraint chair. (Pl.'s Mem. Opp. Sum. J. Mot. at 3.) However, Exhibit R does not address these claims and Exhibit G is the incident report on the use of the mace and restraint chair prepared by the officers - not a grievance filed by the plaintiff. (See Doc. #59 Attach. 10- Ex. R.)

The plaintiff also refers to the affidavit of Keith Brown, an inmate in a nearby cell, who states that the plaintiff was told by defendant Jenkins on July 11, 2007, that she had several of the plaintiff's Step 1 grievances relating to his "classification, property, recreation, denial of book, and two officers misconduct"and and that she would make a copy for the plaintiff. (Pl.'s Mot. For Summ. J. Attach.1 -Brown Aff. ¶ 2.) However, even assuming that the plaintiff filed such

7

grievances relating to his excessive force and prison conditions claims, as he alleges on February 20, 2007, there is no evidence that the plaintiff exhausted his administrative remedies before filing this action on April 3, 2007, because the plaintiff filed his action prior to the expiration of the sixty-day response time for Step 1 grievances. A prisoner does not comply with the mandatory exhaustion requirements by exhausting his remedies during the course of litigation. Exhaustion is a prerequisite to suit that must be completed prior to filing an action. <u>Anderson v. XYZ Corr. Health Servs., Inc.</u>, 407 F.3d 674, 677 (4th Cir. 2005).

Further, as to the plaintiff's claims regarding his first disciplinary hearing, the parties agree that the plaintiff filed Step 1 and Step 2 grievances. However, the defendants contend that the plaintiff improperly filed this action prior to receiving any response on the plaintiff's Step 2. It is undisputed that the plaintiff filed his Step 2 grievance on March 7, 2007.[4] (Pl.'s Mem. Opp. Summ. J. Mot. at 5.) As set out above, the defendants had sixty days to respond. However, prior to the expiration of the sixty days, the plaintiff filed this action on April 3, 2007. Because the plaintiff filed this action on April 3, 2007, when the time for the defendants to respond had not yet passed, this claim was not exhausted. Further, as noted above, a prisoner does not comply with the mandatory exhaustion requirements by exhausting his remedies during the course of litigation. Exhaustion is a prerequisite to suit that must be completed prior to filing an action. <u>Anderson</u>, 407 F.3d at 677.

Consequently, the plaintiff's claims regarding his first disciplinary hearing, the defendants' use of chemical spray and the restraint chair, and the denial of a mattress, sheets, blankets, and clothing should be dismissed because the plaintiff has failed to exhaust his administrative remedies

---

[4]The defendants responded to the Step 2 grievance on June 7, 2007.

prior to filing the instant action. Cabbagestalk v. Ozmint, 2007 WL 2822927 (D.S.C. 2007). *See also* Neal v. Goord, 267 F.3d 116, 123 (2nd Cir.2001)(holding that "allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirements, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court."); Jackson v. Dist. of Columbia, 254 F.3d 262, 268-69 (D.C.Cir. 2001)(rejecting the argument that § 1997e(a) "permits suit to be filed so long as administrative remedies are exhausted before trial"); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)(holding a "prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit."); Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir.1999) (holding "[a]n inmate incarcerated in a state prison, thus, must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983."); Perez v. Wis. Dep't of Corr., 182 F.3d 532, 535 (7th Cir.1999) (holding "a suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment.").

As to the remaining claims, the defendants contend the plaintiff did not file Step 2 grievances or he filed grievances after this action was begun. The plaintiff contends he filed an "emergency" Step 1 grievance on February 20, 2007, in which he alleged that he was threatened by officers and falsely accused of assaulting officers. (Pl.'s Mem. Opp. Summ. J. Mot. at 6.)  He also alleges that on March 6, 2007, he submitted several Step 1 grievances in an attempt to obtain the tape of his disciplinary hearing which was held March 5, 2007. (*Id*.; Document # 59 Ex. K, L, M. )  He alleges the defendants refused to respond to these grievances until April 6, 2007.  (Pl.'s Mem. Opp. Summ. J. Mot. at 6-7.)  He argues that he had only fifteen days to appeal his disciplinary conviction and

9

therefore the defendants should have responded within fifteen days to his grievance seeking a review of the tape of the disciplinary hearing. Clearly, the plaintiff did not exhaust his administrative remedies prior to filing this § 1983 action when he filed this action prior to the running of the time for the defendants to respond to his Step 1 grievances related to these claims. Finally, the plaintiff points to grievances filed in July 2007. (Pl.'s Mem. Opp. Summ. J. Mot. at 7.) Obviously, any grievances filed in July 2007 would not support a finding that the plaintiff had exhausted his administrative remedies prior to filing this action on April 4, 2007. *See* Anderson, 407 F.3d at 677. Accordingly, based on the evidence provided, the plaintiff did not exhaust his administrative remedies prior to filing this action.

Even assuming the plaintiff exhausted these claims, the failure of defendants to timely respond to the plaintiff's grievances is not sufficient to hold an official liable in a civil rights action. The law is well-settled that there is no constitutional right to a grievance procedure. Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-138 (1977). Even if the prison provides for a grievance procedure, violations of those procedures do not amount to a civil rights cause of action. Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1944) (dismissing plaintiff's claim that he was retaliated against when he was barred access to the grievance process because "the Constitution creates no entitlement to grievance procedures or access to any such procedure"); Mann v. Adams, 855 F.2d 639, 640 (9th Cir.1988) (holding prison official's failure to comply with state's grievance procedure is not actionable under § 1983 ); *See also* Doans v. Rice, 831 F.2d 1057 (4th cir. 1987) (unpublished). Thus, even if defendants failed to timely respond to, or process the plaintiff's grievances, the plaintiff has not stated a constitutional claim.

Furthermore, to the extent the plaintiff is asserting a claim based on the defendants' alleged violation of, or failure to follow, their own policies and procedures, this assertion also fails to set forth a claim of a constitutional magnitude. The failure of a prison official to follow prison procedures does not, standing alone, amount to a constitutional violation. *See* Keeler v. Pea, 782 F.Supp. 42, 44 (D.S.C.1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983); Scott v. Hamidullah, 2007 WL 904803 *5 n. 6 (D.S.C. March 21, 2007) *(citing* Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir.1990); Johnson v. S.C. Dep't of Corrections, 2007 WL 904826 at *12 (D.S.C. Mar.21, 2007) ("Plaintiff's allegation that defendants did not follow their own policies or procedures, standing alone, does not amount to a constitutional violation.") (*citing* Riccio, 907 F.2d at 1469). Further, any issues the plaintiff alleges with his grievances do not support a finding that his constitutional rights were violated at his disciplinary hearing.

Additionally, assuming the plaintiff could bring an action concerning his disciplinary hearing, the undersigned finds there has been no due process violation. In Wolff v. McDonnell, 418 U.S. 539(1974), the United States Supreme Court addressed the due process rights of federal prisoners during disciplinary proceedings. In Wolff, the Supreme Court held that a prisoner's accumulation of good time credits, which can affect the length of his incarceration, may give rise to a constitutionally protected liberty interest. *Id*. The Court held that, even so, this does not entitle prisoners to the full panoply of rights afforded a defendant in a criminal prosecution when these credits are forfeited pursuant to a prison disciplinary proceeding. *Id.* at 556-57.

The Supreme Court enumerated the following five procedural safeguards which are required in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body;

(2) written notice of the charges 24 hours in advance of the disciplinary hearing; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative if charged inmate is illiterate or if complex issues are involved; and (5) a written decision by the fact-finder as to the evidence relied upon and the rationale behind the disciplinary tribunal's conclusion. 418 U.S. at 563-66. The plaintiff alleges the defendants denied him due process in relation to his disciplinary hearing by "not providing him with prison rules, adequate notice, and denying him reasonable time to prepare." (Pl.'s Mem. Opp. Summ. J;. Mot. at 8.) It is undisputed that the plaintiff was notified on March 2, 2007, at 6:00p.m. of the hearing to held March 5, 2007. The plaintiff, however, contends this was inadequate notice because the mail had gone out for the day and he was unable to order law books or legal supplies. (*Id*. 8-9) Pursuant to Wolff, there was no violation of the plaintiff's due process rights as the plaintiff acknowledges that he received more than 24 hours notice. Furthermore, the plaintiff's allegations relating to any violations of the SCDC policy regarding disciplinary proceedings also fail. As stated above, the failure of a prison official to follow prison procedures does not, standing alone, amount to a constitutional violation. *See* Keeler, 782 F.Supp. at 44 (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

In addition, the Supreme Court has held that a finding of "some evidence" in the record to support the decision of a prison disciplinary board satisfies the requirements of due process. Superintendent Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985). The determination of whether the standard is satisfied merely requires inquiry into "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* Further, it must be remembered,

however, that "[a]scertaining whether [the] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing the evidence." *Id.* at 455-56. If the Wolff guidelines are satisfied, prison officials must be given "wide ranging deference" in pursuing legitimate penological concerns. James v. North Carolina Prisoners Labor Union, 433 U.S. 119, 126 (1977) (curbing an unlawful drug epidemic). Such deference is essential "because the administrator ordinarily will, as a matter of fact in a particular case, have a better grasp of his dominion than the reviewing judge." Bell v. Wolfish, 441 U.S. 520, 548 (1979). Accordingly, findings of prison disciplinary boards meet the minimum requirement of due process if they are supported by "some evidence" on the record. Superintendent v. Hill, 472 U.S. at 454.

Here, the DHO relied upon the narrative of Officers Rodgers. (Defs.' Mem. Supp. Summ. J. Mot Ex. 11.) Officer Rodgers in the incident report stated that while he was serving a food tray to the plaintiff, the plaintiff attempted to stab him with an ink pen. (*Id*. Ex. 16.) Officer Williams, in a report on the use of force, also stated when Officer Rodgers was serving the plaintiff a food tray, the plaintiff had tried to stab Officer Rodgers with an ink pen. (*Id.* Ex. 17.) There was some evidence to support the DHO's decision. Furthermore, the undersigned notes that the plaintiff was sanctioned with the imposition of 360 days of disciplinary detention, and 180 days of loss of canteen and telephone privileges. Because the plaintiff did not lose any good time credits, the only deprivation he suffered was segregation from the general prison population, which is not a constitutionally protected liberty interest. Sandin v. Conner, 515 U.S. 472 (1995) (holding that discipline in segregated confinement does not implicate constitutional liberty interests).

Finally, the undersigned notes that the plaintiff contends that his re-classification following his assault and battery violated his constitutional rights, the SCDC policy and procedure. However,

13

the plaintiff does not have a constitutional right to be held in a certain classification. <u>Adams v. Rice</u>, 40 F.3d 72, (4th Circ. 1994). Further, as noted above, the plaintiff does not have a liberty interest in his level of classification. <u>Sandin</u>, 515 U.S. 472.

### III.  CONCLUSION

Based on the foregoing, it is recommended that the defendants' motion for summary judgment (documents # 61) be GRANTED; the plaintiff's motion for summary judgment (document # 71) be DENIED; and the plaintiff's complaint be dismissed.

Further, it is recommended that the plaintiff's motions to strike the defendants' summary judgment motion (document # 70) and to compel discovery (document # 78) be DENIED as moot.

                                      Respectfully submitted,

                                      s/Thomas E. Rogers, III
                                      Thomas E. Rogers, III
February <u>28</u>, 2008                    United States Magistrate Judge
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**